467 P.2d 917

**STATE of Arizona ex rel. ARIZONA STATE BOARD OF PARDONS AND PA- ROLES, Petitioners,**

v.

**SUPERIOR COURT OF MARICOPA COUN- TY, Judge Jerry H. Glenn, Winnie Ruth Judd, Real Party In Interest, Respond- ents.**

No. 1 CA–CIV 1287.

Court of Appeals of Arizona,
Division 1,
Department A.

April 14, 1970.

Review Denied June 16, 1970.

Gary K. Nelson, Atty. Gen., for petitioners.

Debus & Busby, Phoenix, for respondent Winnie Ruth Judd.

STEVENS, Judge.

The question presented to the Court is the extent to which the Superior Court can review or modify the action of the Arizona State Board of Pardons and Paroles wherein the Board declined to recommend to the Governor of the State of Arizona that the sentence of the Respondent Judd be commuted.

The matter under consideration was presented to the Court of Appeals by a special action pursuant to the Rules of Procedure for Special Actions, 17 A.R.S. This Court, being satisfied as to the service upon the Respondent Judge and the other parties appearing by their counsel, a hearing was held pursuant to Rule 7(c). At the conclusion of the hearing, an order was entered taking the matter under advisement. On 19 February 1970, this Court entered a further order expressly reserving the matter as to whether it would assume jurisdiction. This Court further ordered that the trial court take no further action in the Superior Court matter pending further order of this Court. Rule 5. Both sides were afforded the opportunity to submit briefs in addition to the memoranda which were submitted in support of the petition and in support of the response.

Winnie Ruth Judd, the respondent real party in interest in the proceeding before the Court of Appeals, was tried and found guilty of the murder of Agnes Ann LeRoi. She was sentenced to death. The conviction was affirmed. Judd v. State, 41 Ariz. 176, 16 P.2d 720 (1932).

As to the additional factual background, we rely on the complaint which was filed in the Superior Court and the exhibit which was attached thereto. The Superior Court action was a civil action wherein the Respondent Judd was the plaintiff. In the Superior Court action the petitioners herein were the defendants. In the trial court they filed a motion to dismiss. In an extensive order, The Honorable Jerry H. Glenn, a Judge of the Superior Court and the Respondent Judge in this Court, denied the motion to dismiss. There were further provisions set forth in the order. It is that order which is before the Court of Appeals in this special action.

It appears that after the affirmance by our Supreme Court, there was a "post trial adjudication of insanity." The Respondent Judd was then transferred to the Arizona State Hospital. On 11 May 1952, the then Governor of Arizona "commuted her death sentence to life imprisonment." Thereafter, there being "no evidence of mental disease" the Arizona State Hospital retransferred her to the Arizona State

Prison. This event took place on 22 August 1969.

On 29 August 1969, she "made application to the Arizona Board of Pardons and Paroles for commutation of her life sentence." A hearing was held on 27 October 1969. She appeared at the hearing with her counsel, "testimony was given and evidence presented." The complaint in the Superior Court alleges that the testimony and evidence "all * * * indicated that" Winnie Ruth Judd "had completely rehabilitated herself and that [she] could live and remain at liberty without violating the law." Her application was denied by the majority of the Board on 31 October 1969. On 4 December 1969, she filed her "Complaint for Administrative Review" wherein she alleged that "the jurisdiction of * * * [the Superior] Court is invoked under the provisions of Arizona Revised Statutes Section 12–905." She alleged that the action of the Board, taken on 31 October 1969, was arbitrary and capricious; that she was denied due process of law; and that she was denied equal protection of the law. Pursuant to A.R.S. § 12–909, subsec. A her complaint demanded "the filing [with the Superior Court] of the entire transcript of the above referred to proceedings [before the Board], and any other testimony, evidence or information bearing upon their findings and decision."

The prayer of the complaint, which is significant as to the type of relief sought and which casts light upon the order which was entered by the Respondent Judge, provides in part:

"1. That the decision of defendant ARIZONA STATE BOARD OF PARDONS AND PAROLES be reversed and

"2. That Defendant BOARD OF PARDONS AND PAROLES be ordered to forward to the Governor of the State of Arizona a recommendation that the Plaintiff's life sentence be commuted; * * *."

The motion of the Board in the Superior Court was one to dismiss the complaint "for the reason that the same fails to state a claim upon which relief can be granted."

On 23 January 1970, the Respondent Judge entered the order now before this Court. Therein it was held that the Administrative Review Act, of which A.R.S. § 12–902 is a part, was applicable to review the proceedings which had been conducted by the Board.

No issue is raised as to whether a single prisoner is eligible to receive successive commutations, that is, one from a death sentence to a life sentence and then a second one being a commutation of the life sentence. We express no opinion as to this matter.

## COMMUTATION

The sole power to commute a sentence rests with the Governor under the provisions of § 5 of Article 5 of our Constitution, A.R.S., which reads as follows:

"§ 5. Reprieves, commutations and pardons. Section 5. The Governor shall have power to grant reprieves, commutation, and pardons, after convictions, for all offenses except treason and cases of impeachment, upon such conditions and with such restrictions and limitations as may be provided by law."

The constitutional provision is supplemented by A.R.S. § 31–443 which reads as follows:

"§ 31–443. Power of governor to grant reprieves, commutations and pardons

"The governor, subject to the regulations provided in this chapter, may grant reprieves, commutations and pardons, after conviction, for all offenses, except treason and impeachment, upon conditions, restrictions and limitations he deems proper."

The Legislature has placed restrictions and limitations upon the exercise of the power

of commutation. See A.R.S. § 31–402, subsec. A which reads as follows:

"§ 31–402. Powers of board; powers and duties of governor

"A. The board of pardons and paroles shall have exclusive power to pass upon and recommend reprieves, commutations, paroles and pardons. No reprieve, commutation, parole or pardon may be granted by the governor unless it has first been recommended by the board."

Our Supreme Court had the functions of the Board under consideration in McGee v. Arizona State Board of Pardons and Paroles, 92 Ariz. 317, 376 P.2d 779 (1962). Therein the Court held that:

"[a]lthough the Governor may grant reprieves, commutations and pardons, A.R.S. § 31–443, it is the exclusive power of the Board to pass upon and recommend such and they may not be granted by the Governor unless first so recommended by the Board, A.R.S. § 13–402, subsec. A." 92 Ariz. at page 318, 376 P.2d at page 780.

In McGee the Supreme Court commented upon the fact that the Board had not adopted rules as authorized by A.R.S. § 31–403. It is interesting to note that this section was repealed by § 10, subd. B of Chapter 198, Laws of 1968, effective prior to the date of the hearing now in question. In the same case the Supreme Court did not undertake to review an act of the Board. Therein the Supreme Court directed that the Board act. The Supreme Court further held that those entitled to a hearing before the Board are entitled to "a hearing in a substantial sense." The Court further stated:

"[i]f it is to be justified under the law, it must not be done with less formality than the spirit and the traditions of the law contemplate." 92 Ariz. at page 320, 376 P.2d at page 781.

■ In the matter now before this Court, The Attorney General concedes, and we hold, that the Superior Court has the power to review the proceedings of the Board to determine the presence or absence of due process in the conduct of the hearing on commutation.

■ It is well to mention here that the Respondent Judd urges that the Board did not observe the statutory criteria. The only statutory criteria relate to the exercise of the permissive authority granted to the Board to release prisoners on parole. A.R.S. § 31–412 as amended in 1968. The power of parole rests with the Board and not in the Governor. State of Arizona ex rel. Murphy v. Superior Court, 30 Ariz. 332, 246 P. 1033 (1926).

■ Our Supreme Court discussed the Board and its powers in the case of State v. Howland, 103 Ariz. 250, 439 P.2d 821 (1968). The Court stated, "[i]t would be a matter of grace and not of right as to whether he would be granted a parole." 103 Ariz. at 254, 439 P.2d at 825, citing Orme v. Rogers, 32 Ariz. 502, 260 P. 199 (1927). In our opinion this would be more especially true in the matter of commutation. Also in Howland our Supreme Court stated:

"If defendant spends the rest of his natural life in the penitentiary, it will undoubtedly be because the Board of Pardons and Paroles is not convinced that he has become rehabilitated." 103 Ariz. at 257, 439 P.2d at page 828.

■ On the foregoing, it appears that while the Courts can compel the Board to act, the Court cannot compel the Board to act in any particular manner.

## THE ADMINISTRATIVE REVIEW ACT

The basic issue is whether Article 6 of Title 12 of the Arizona Revised Statutes entitled "Judicial Review of Administrative Decisions" and cited as the Administrative Review Act is applicable.

The sections of our statutes relating to the Board of Pardons and Paroles are silent as to the right of judicial review. Prior to the adoption of the Administrative Review Act in 1954, there was no right to a judicial review of the acts of an ad-

ministrative agency unless the act creating that agency so provided. Allen v. Graham, 8 Ariz.App. 336, 446 P.2d 240 (1968). We find this case persuasive in relation to the principles involved in this matter. See the following cases as well on the general principles herein involved: Duncan v. Superior Court, 65 Ariz. 193, 177 P.2d 374 (1947); Mendelsohn v. Superior Court, 76 Ariz. 163, 261 P.2d 983 (1953); Knape v. Brown, 86 Ariz. 158, 342 P.2d 195 (1959); Arizona Commission of Agriculture and Horticulture v. Jones, 91 Ariz. 183, 370 P.2d 665 (1962); Roer v. Superior Court, 4 Ariz.App. 46, 417 P.2d 559 (1966).

The 1954 Act was amended in 1955 to exclude the applicability of the Act to the State Department of Public Welfare. A. R.S. § 12–902. It is argued with some logic that the necessary conclusion is that the official acts of the Board, not being expressly excluded, are subject to judicial review. We do not agree with this contention.

A.R.S. § 31–402, subsec. A, heretofore quoted, vests the Board with the "exclusive power to pass upon and recommend * * commutations * * *." The Governor may not commute a sentence "unless it has first been recommended by the Board." It is our opinion that in relation to matters of commutation the Board is an arm of the Governor with the *exclusive* power to recommend or to not recommend a commutation. If the Board recommends, the Governor is not bound by that recommendation. A.R.S. § 12–910, a portion of the Administrative Review Act, authorizes trials *de novo* and, on demand, the trial may be before a jury. In our opinion, this is not consistent with a recommendation to the Governor.

A.R.S. § 12–911 relates to the power of the trial court and includes the power to "5. Modify, affirm or reverse the decision in whole or in part." A right of appeal is also granted, this being found in A.R.S. § 12–913. We hold that it is not appropriate to run the gamut of judicial process only to find that the end result is a mere recommendation which is not binding upon the Governor. There would be no enforceable mandate as a result of the appellate opinion. All of these procedures are inconsistent with the transmittal of a recommendation by the Board to the Governor.

It is strenuously urged that it lies within the power of the Legislature and only within the power of the Legislature to exclude the actions of the Board from the provisions of the Administrative Review Act. We turn to § 12–901 to determine whether the Board comes within the definitions contained in that section of the Act. Subsection 1 thereof states in part:

"1. 'Agency' or 'administrative agency' means every * * * board, * * * authorized by law to exercise rule-making powers or to adjudicate contested cases, * * *."

As heretofore pointed out, the statute granting the rule-making power to the Board has been repealed. In our opinion in the field of commutation at least, the Board does not "adjudicate," it can only recommend or decline to recommend. We hold that the Administrative Review Act is not available to review the recommendations or absence of recommendations of the Board. We hold that in view of the fact that the Act is not available to review the proceedings before the Board, it was not necessary for the Legislature to expressly exempt the proceedings before the Board from the provisions of the Act.

Does the statute itself, by granting exclusive power to the Board, exempt the proceedings? The action of the Board in declining favorably to recommend or commute does not appear to have the finality of an "adjudication." Under A.R.S. § 31–411, subsec. B when a parole application has been denied, the prisoner must wait six months before the application may again be considered by the Board. There does not appear to be an exclusion in relation to the failure of the Board to recommend commutation. A.R.S. § 31–402, subsec. B relates to the processing of applica-

tions for commutations. The provisions of this subsection are quoted by the Arizona Supreme Court and discussed by that Court in McGee.

## THE PENDING SUPERIOR COURT ACTION

Since the Superior Court complaint was based upon the Administrative Review Act and since the Administrative Review Act is not applicable does this mean that the Superior Court action must be dismissed? We believe not. A mistake in selecting the remedy is not always fatal. This is especially true when extraordinary relief is sought. Extraordinary relief is proper where there is no plain, speedy and adequate remedy. "It is a remedy within the sound discretion of the court to which application is made." Caruso v. Superior Court, 100 Ariz. 167 at 172, 412 P.2d 463 at 466 (1966), quoting City of Phoenix v. Rodgers, 44 Ariz. 40, 34 P.2d 385 (1934). Caruso depends upon the facts of each case. The guiding principle must be our obligation to see that essential justice is done. Genda v. Superior Court, 103 Ariz. 240, 439 P.2d 811 (1968), citing Caruso repeats the guiding principle of essential justice. In State v. Superior Court, 103 Ariz. at 208 at 210, 439 P.2d 294 at 296 (1968), our Supreme Court stated:

> "We will consider any application to this Court which states sufficient facts to justify relief irrespective of its technical denomination. Art. VI, § 5, ¶4 Constitution of Arizona, State v. Court of Appeals, Division Two, 101 Ariz. 166, 416 P.2d 599."

The Respondent Judd made allegations in her complaint which would vest jurisdiction in the Superior Court under the Rules of Procedure for Special Actions. The fact that she erroneously invoked the Administrative Review Act need not be fatal to her Superior Court complaint. It is the rule in Arizona,

> " * * * [T]hat amendments should be allowed liberally in the interest of justice, so that cases should ultimately be tried

on their merits and not on technical questions of procedure." Aiken v. Protis, 59 Ariz. 101 at 106, 123 P.2d 169 at 171 (1942); See also Cagle v. Carr, 101 Ariz. 225, 418 P.2d 381 (1966).

Leave to amend pleadings is left within the sound discretion of the trial judge.

Even though the Superior Court action was filed prior to the effective date of the Rules of Procedure for Special Actions, it is our opinion that a special action pursuant to those rules is an appropriate remedy and that the civil complaint now on file in the Superior Court is subject to amendment to conform with those rules.

We hold that the Respondent Judge may require that the records of the proceedings before the Board be certified to the Superior Court to determine the presence or absence of due process and the presence or absence of a meaningful hearing. We hold that if these tests are not met, the matter may be returned to the Board for further proceedings. We hold that the Superior Court cannot direct the Board to return to particular recommendation. See the discussion in Allen v. Graham, supra, on this point. In Gagle Bros. Trucking Service v. Arizona Corporation Commission, 96 Ariz. 270 at 272, 394 P.2d 203 at 205 (1964), our Supreme Court stated that:

> "Mandamus lies to require an administrative body to exercise its discretion which it has a duty to perform, even though it cannot require it to be exercised in any particular manner. Arizona State Highway Commission v. Superior Court of Maricopa County, 81 Ariz. 74, 299 P.2d 783." See also State Board of Dispensing Opticians v. Carp, 85 Ariz. 35, 330 P.2d 996 (1958), and City of Phoenix ex rel. Robert J. Backstein v. Superior Court, 6 Ariz.App. 327, 432 P.2d 471 (1967).

We further hold that the Superior Court cannot substitute its recommendation for that of the Board.

The issuance of the mandate in connection with this opinion will constitute a

modification of this Court's order of 19 February 1970 and will grant to the Superior Court the authority to entertain further proceedings not inconsistent with this opinion.

DONOFRIO, P. J., and CAMERON, J., concur.