**William Lyle WORATZECK, Plaintiff–Appellant,**

v.

**ARIZONA BOARD of EXECUTIVE CLEMENCY, et al., Defendants–Appellees.**

**No. 97–99015.**

United States Court of Appeals, Ninth Circuit.

Submitted June 24, 1997. *

Decided June 24, 1997.

* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a) and Ninth Circuit Rule 34–4.

David J. Burman, Ruth Todd Chattin, Susan Fahringer, Perkins Coie, Seattle, WA, for plaintiff–appellant.

Paul J. McMurdie, Chief Counsel, Office of the Attorney General, Criminal Appeals Section, Phoenix, AZ, for defendants–appellees.

Before: WALLACE, FARRIS, and BOOCHEVER, Circuit Judges.

PER CURIAM.

██ Woratzeck, an Arizona state prisoner sentenced to death tomorrow morning at 12:05 a.m., appeals from the district court's denial of his motion for a temporary restraining order (TRO) and stay of his execution. Denial of a TRO is normally not a final appealable order. However, since Woratzeck faces imminent execution, "the court will not require [Woratzeck] to go through the futile act of reapplying for permanent relief and the denial of a TRO may be treated as a de facto denial of a permanent injunction." *Graham v. Teledyne–Continental Motors,* 805 F.2d 1386, 1388 (9th Cir.1986), *cert. denied,* 484 U.S. 815, 108 S.Ct. 67, 98 L.Ed.2d 31 (1987). Thus, we have jurisdiction to consider Woratzeck's appeal of the TRO. We will reverse the district court's order denying this injunctive relief only if it abused its discretion, or based its decision on an erroneous legal standard or clearly erroneous findings of fact. *Does 1–5 v. Chandler,* 83 F.3d 1150, 1152 (9th Cir.1996). We also have jurisdiction over the denial of the stay of execution.

I

Woratzeck filed a petition seeking Executive Clemency on June 4, 1997. The five-person Board of Executive Clemency (Board) is responsible to make a recommendation to the Governor. After a hearing, the Board recommended against clemency by a four to one vote.

Woratzeck brought this action in the district court pursuant to 42 U.S.C. § 1983, contending that his due process rights were violated. He requested, and was denied, a motion for a temporary restraining order, a stay of execution, and a declaratory judgment.

Woratzeck asserts that the involvement of Robert C. Brown, his former counsel on an appeal, and Dwight Callahan, his former counsel in his burglary trial, in the clemency proceedings violated his Due Process rights. Both are now members of the Pinal County Attorney's office, which is the prosecuting authority in Woratzeck's case. According to Woratzeck, Brown prepared the brief submitted to the Board, and helped prepare witnesses and exhibits to oppose Woratzeck's request for clemency at the hearing. Woratzeck also alleges that Callahan assisted Brown in preparation for the hearing. While Woratzeck does not allege that either Brown or Callahan revealed confidential communications to the Board, he asserts that the "presence of conflicted counsel is presumptively prejudicial."

He also asserts a second conflict. The State Attorney General is legal counsel to the Board. Yet, he alleges, the Office of the Attorney General has actively been involved on behalf of the prosecution.

The prosecution offered its own declarations, but no evidentiary hearing was held in the district court. Therefore, we accept the facts as alleged by Woratzeck.

II

██ We first must decide whether an action under 42 U.S.C. § 1983 is the proper vehicle for litigating this claim. The Sixth Circuit concluded that it was. *Woodard v. Ohio Adult Parole Authority,* 107 F.3d 1178, 1187 (6th Cir.1997) (*Woodard*), *pet. for cert. filed,* 65 U.S.L.W. 3756 (May 6, 1997). However, the Supreme Court recently decided in *Edwards v. Balisok,* —— U.S. ——, ——, 117 S.Ct. 1584, 1589, 137 L.Ed.2d 906 (1997) (*Edwards*), that a "claim for declaratory relief and money damages ... that necessarily impl[ies] the invalidity of the punishment imposed is not cognizable under § 1983." We thus must consider whether *Edwards* prohibits Woratzeck from raising this claim under section 1983.

In *Edwards,* Balisok alleged that the procedures used in his disciplinary hearing violated his Fourteenth Amendment due process rights. He requested declaratory relief and monetary damages; however, he did not request restoration of his good-time credits. The district court denied his claim, but we reversed and held that a claim challenging

only the procedures employed in the disciplinary hearing is available under section 1983. *Id.* at ——-——, 117 S.Ct. at 1586-87.

The Supreme Court unanimously reversed our decision. It cited *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) (*Heck*), and stated that our decision disregarded "the possibility, clearly envisioned by *Heck*, that the nature of the challenge to the procedures could be such as necessarily to imply the invalidity of the judgment." *Edwards*, —— U.S. at ——, 117 S.Ct. at 1587. The Court then held that:

> [t]he principal procedural defect complained of by respondent would, if established, necessarily imply the invalidity of the deprivation of his good-time credits. . . . This is an obvious procedural defect, and state and federal courts have reinstated good-time credits (absent a new hearing) when it is established.

*Id.* at ——, 117 S.Ct. at 1588. Since Balisok's requested relief would "imply the invalidity of the punishment imposed, [it] is not cognizable under § 1983." *Id.* at ——, 117 S.Ct. at 1589.

In our case, Woratzeck argues that the procedural defects in the clemency hearing denied him his Due Process rights. Our question after *Edwards* is whether the relief that Woratzeck seeks would "necessarily imply the invalidity of the punishment imposed." *Id.* While this is a very difficult question, we conclude that *Edwards* does not prohibit Woratzeck from raising his claim under section 1983. The relief that Woratzeck seeks—a new clemency hearing—would not "demonstrate[ ] the invalidity" of his death sentence. Rather, it would only provide him another clemency hearing. Unlike the requested relief in *Edwards*, which necessarily implied the invalidity of the revocation of his good-time credits, a second clemency hearing, by itself, would not invalidate his death sentence. Rather, it would merely provide the Board another chance to review his clemency claim. Since Woratzeck's requested relief would not "necessarily imply the invalidity of his conviction or sentence," *Heck*, 512 U.S. at 487, 114 S.Ct. at 2372, his suit is cognizable under section 1983.

## III

■ Woratzeck argues that the district court erred by rejecting his claim that the involvement of his former counsel and the Attorney General in the clemency proceedings violated his procedural due process rights. He asserts that under Arizona law, a clemency hearing must be "a hearing in a substantial sense," *McGee v. Arizona State Bd. of Pardons*, 92 Ariz. 317, 376 P.2d 779, 781 (1962), and contends that Brown's, Callahan's, and the Attorney General's assistance in preparing for the clemency hearing violated this standard.

In *Olim v. Wakinekona*, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983) (*Olim*), the Supreme Court held that when a state's laws "place no substantive limitations on official discretion[, they] create no liberty interest entitled to protection under the Due Process Clause." *Id.* at 249, 103 S.Ct. at 1747. Arizona places no substantive limitations on official discretion over the ultimate decision to grant or deny clemency. *See* A.R.S. § 31-402(A) ("the board of executive clemency shall have exclusive power to pass upon and recommend reprives, commutations, paroles, and pardons"); A.R.S. § 31-443 ("[t]he governor, subject to any limitations provided by law, may grant reprieves, commutations and pardons, after conviction, for all offenses, except impeachment, upon conditions, restrictions and limitations *he deems proper* ") (emphasis added); *State ex rel. Arizona State Bd. of Pardons & Paroles v. Superior Court of Maricopa County*, 12 Ariz.App. 77, 467 P.2d 917, 920 (1970) ("while the Courts can compel to Board to act, the Court cannot compel the Board to act in any particular manner"); *see also Woodard*, 107 F.3d at 1178 (applying *Olim* to conclude that Ohio's clemency procedure vested "unfettered discretion" in the governor).

While the governor can grant clemency only when the Board makes such a recommendation, *see* A.R.S. § 31-402(A), neither the Board nor the governor have any "objective and defined" criteria which guides their decision. As the Court said in *Olim*: "If the decisionmaker is not 'required to base its

decisions on objective and defined criteria,' but instead 'can deny the requested relief for any constitutionally permissible reason or for no reason at all,' the State has not created a constitutionally protected liberty interest." *Olim*, 461 U.S. at 249, 103 S.Ct. at 1747 (quoting *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 466–67, 101 S.Ct. 2460, 2465–66, 69 L.Ed.2d 158 (1981)) (citation omitted). Since no "objective and defined criteria" guide either the Board or the governor, we conclude that Arizona's clemency laws "create no liberty interest entitled to protection under the Due Process Clause." *Olim*, 461 U.S. at 249, 103 S.Ct. at 1747. Like the Sixth Circuit in *Woodard*, we do not decide if *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), affects *Olim*. If it does, it can only do so to Woratzeck's detriment.

## IV

■ Even though Arizona's clemency laws do not create a new constitutionally protected liberty interest in clemency procedures, we must also consider whether Woratzeck's original interest in life and liberty imposes some constitutional requirements. We believe that *Woodard* is instructive. In *Woodard*, the Sixth Circuit cited the Supreme Court's decision in *Evitts v. Lucey*, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985), to conclude that all proceedings that play an "integral part" in a state's criminal justice procedure must abide by some form of procedural due process, even if the state is not required to provide the proceeding. *Woodard*, 107 F.3d at 1186. *Woodard* then concluded that clemency hearings, the very last stage in most criminal justice procedures, must comport with some form of procedural due process. *Id.* at 1187. However, the court emphasized that federal courts should approach this issue "with great caution and deference." *Id.* at 1188. "The degree to which each component forms an 'integral part' of the overall adjudicative system determines the degree to which due process plays a role. Of course, the more distant the procedure from initial proceedings, the less stringent the requirements must be." *Id.* at 1186.

■ Applying *Woodard* to this case, we conclude that the due process that the Constitution requires for a clemency hearing is quite limited. A clemency hearing is far removed from the original judicial proceeding, and is granted only as a matter of executive grace. Although no verbal formulation can capture the requirements of due process precisely, we conclude that a procedural due process violation exists only if the Board's procedures "shock the conscience." The alleged involvement of Brown, Callahan, and the Attorney General in the preparation of the clemency proceedings is unfortunate and inexcusable. However, Woratzeck informed the Board of their involvement, and the Board could consider that fact when it made its clemency decision. The Board also allowed Woratzeck, family members, religious groups, and friends to testify as to why he deserved clemency. While Woratzeck's clemency hearing was not perfect, it need not have been. Neither Brown nor Callahan appeared at the hearing. Woratzeck fully exposed their challenged participation to the Board. Woratzeck did not allege that any specific information he provided in confidence was used against him. The fact that Woratzeck had an adequate opportunity to explain why the Board should spare his life leads us to conclude that the hearing did not "shock the conscience," and thus did not violate Woratzeck's procedural due process rights.

AFFIRMED.

BOOCHEVER, J., Dissenting and Granting a Temporary Stay of Execution:

I also agree with Judge Moore's analysis of the federal process due in clemency proceedings. *See Woodard v. Ohio Adult Parole Auth.*, 107 F.3d 1178 (6th Cir.1997), *petition for cert. filed*, 65 U.S.L.W. 3756 (May 6, 1997).

> Given this clear recognition by the Court of the integral part played by clemency in every state's death-penalty scheme, we find it only rational to apply *Evitts*'s principle in equal measure to clemency procedures. We acknowledge at the same time that the due process at the clemency stage will necessarily be minimal, perhaps even

barely perceptible, because of the great distance from the truly fundamental process-the trial, the appeal-and the significant distance from other extremely important process-discretionary appeals and post-conviction petitions.

*Id.* at 1187. The reasoning by which due process places constraints on appeals "logically applies to further proceedings made available by the government, as well," including clemency proceedings. *Id.* at 1186 The process due at a clemency proceeding, however, will necessarily be minimal because of its great distance from the trial and other post-conviction remedies. That federal right in any event may be based on Arizona's holding that, in clemency hearings, "due process of law requires notice and opportunity to be heard, and there must be a hearing in a substantial sense .... in accordance with the cherished judicial tradition embodying the basic concepts of fair play." *McGee v. Arizona State Bd. of Pardons & Paroles,* 92 Ariz. 317, 376 P.2d 779, 781 (1962) (quotations and citations omitted). *See State Bd. of Pardons & Paroles v. Superior Court,* 12 Ariz.App. 77, 467 P.2d 917, 920, 922 (1970) (Arizona Superior Court has power to review Board proceedings to determine due process in commutation hearing and may return matter to Board for further proceedings).

I also agree that an action under 42 U.S.C. § 1983 provides an appropriate vehicle for raising this type of due process claim. If ever a case presented a significant likelihood of the type of due process violation cognizable in a clemency proceeding, however, this is one. There is no question but that Woratzeck's former counsel orchestrated the presentation to the clemency board urging denial of clemency.

Under these circumstances, we should grant a temporary restraining order staying the execution and remanding to the district court to determine whether the conflict of interest undermined the fairness of the clemency proceedings.