In the

# United States Court of Appeals
## For the Seventh Circuit

No. 08-4153

STEPHANIE BOWENS, *et al.*,

*Plaintiffs-Appellees*,

*v.*

PAT QUINN, Governor of Illinois,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 CV 04915—**Joan B. Gottschall**, *Judge*.

ARGUED FEBRUARY 17, 2009—DECIDED APRIL 2, 2009

Before POSNER, KANNE, and WOOD, *Circuit Judges*.

POSNER, *Circuit Judge*. Article V, section 12, of the Illinois Constitution provides that "the Governor may grant reprieves, commutations and pardons, after conviction, for all offenses on such terms as he thinks proper. The manner of applying therefor may be regulated by law." An Illinois statute establishes procedures for the exercise of this power of executive clemency, and provides that though "nothing in this

[statute] shall be construed to limit the power of the Governor under the constitution to grant a reprieve, commutation of sentence, or pardon, . . . the Governor shall decide each application." 730 ILCS 5/3-3-13(d), (e). The appellees, who were the plaintiffs in the district court, are twelve Illinoisans who filed petitions for executive clemency between 2003 and 2005. Originally there were just nine plaintiffs. But then-Governor Blagojevich, the original defendant, while his motion to dismiss the suit was pending, granted one of the petitions and denied eight, whereupon the plaintiffs amended their complaint to add three new plaintiffs, whose petitions for executive clemency had not been acted on.

It might seem that the case would be moot with regard to the nine plaintiffs whose petitions were acted on, since the only relief they seek is an injunction requiring the governor to decide within a reasonable time whether to grant a pardon that has been applied for. But the situation of the eight whose applications were denied is similar to that of a pregnant woman who challenges an abortion law and by the time the case is ready to decide has given birth. Her case is "capable of repetition [she may become pregnant again], yet evading review," *Roe v. Wade*, 410 U.S. 113, 124-25 (1973), quoting *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911); see also *Weinstein v. Bradford*, 423 U.S. 147, 148-49 (1975) (per curiam), and on this ground is held not to be moot. The situation of the eight plaintiffs is similar because each of them can file a new petition for executive clemency after a year has elapsed from the denial of a previous one, 730 ILCS 5/3-3-13(a-5), and thus would

face the prospect of having their next suit rendered moot by another prompt denial. Eventually they would be exhausted from repeated futile suits and would give up, and the governor could then resume his alleged policy of "pocket vetoing" clemency petitions. We conclude that only the claim of the plaintiff whose clemency petition was granted is moot.

The plaintiffs contend that by failing to act on their petitions within a reasonable time, the governors have violated the due process clause of the Fourteenth Amendment. The district court refused to dismiss the case, precipitating this interlocutory appeal. 28 U.S.C. § 1292(b). We think she should have dismissed the case; the plaintiffs have no good constitutional claim.

There is no Fourteenth Amendment property or liberty interest in obtaining a pardon in Illinois—no substantive entitlement, in other words—and so no ground for a claim of denial of due process. This well-established principle of constitutional law, *Olim v. Wakinekona*, 461 U.S. 238, 250-51 (1983); *Villanova v. Abrams*, 972 F.2d 792, 798 (7th Cir. 1992), was applied to pardons in *Connecticut Board of Pardons v. Dumschat*, 452 U.S. 458, 464 (1981), where the Court pointed out that "a decision whether to commute a long-term sentence generally depends not simply on objective factfinding, but also on purely subjective evaluations and on predictions of future behavior by those entrusted with the decision. A commutation decision therefore shares some of the characteristics of a decision whether to grant parole. See *Greenholtz* [*v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 9-10

(1979)]. Far from supporting an 'entitlement,' *Greenholtz* therefore compels the conclusion that an inmate has 'no constitutional or inherent right' to commutation of his sentence." (To the same effect, see *Ohio Adult Parole Authority v. Woodard*, 523 U.S. 272 (1998), and *Woratzeck v. Arizona Board of Executive Clemency*, 117 F.3d 400, 403-04 (9th Cir. 1997).) The Illinois governor's power of pardon is plenary; no substantive limitation is imposed by the state constitution or by any other source of state law. Cf. *Miller v. Henman*, 804 F.2d 421, 424-25 (7th Cir. 1986); *Huggins v. Isenbarger*, 798 F.2d 203, 206 (7th Cir. 1986) (per curiam).

The plaintiffs try to sidestep *Dumschat* by arguing that they are claiming an entitlement not to a pardon but merely to a reasonably prompt decision on their application, which they contend is a real "entitlement" because it invokes a statutory command (the Governor *shall* decide whether to grant the pardon) rather than merely seeking an exercise of uncanalized discretion. But the only reason they want a decision is that it is their only hope of getting a pardon, and if they obtained a pardon it would not secure an interest protected by the due process clause. The grant of a pardon must not be confused with restoration of freedom. The plaintiffs completed their sentences long ago. They want pardons because they have trouble finding and holding jobs, and they have that trouble because they have to tell employers, if the employers ask, that they are felons. This quandary would be relevant to their quest for jobs (including promotions) only if a pardon would wipe the slate clean, ending their status as felons. In general that is not true, at least in Illinois. "[A] pardon implies guilt; it does not obliterate the fact of the

commission of the crime and the conviction thereof." *Talarico v. Dunlap*, 685 N.E.2d 325, 327 (Ill. 1997). "'The granting of a pardon does not expunge the record [of conviction].'" *People v. Glisson*, 372 N.E.2d 669, 670 (Ill. 1978), quoting the Illinois Clemency Rules Book.

The governor can, it is true, grant a pardon that explicitly authorizes expungement of the applicant's conviction upon application to a court, 20 ILCS 2630/5(c), and the grant of the application would bar prospective employers from considering the expunged conviction, 20 ILCS 2630/12(a). But the court to which the application for expungement is made after the governor acts is not required to grant it; the application is merely a request that the court exercise discretion in the applicant's favor. *People v. Howard*, 2009 WL 711121 (Ill. Mar. 19, 2009). Anyway the plaintiffs don't tell us whether they sought such a pardon, as they could have done by checking a box on the application form, www.state.il.us/prb/docs/clempetition.pdf (visited Mar. 20, 2009), or sought merely the normal general pardon, which does not lead to expungement. There are also pardons based on a determination that the applicant was innocent of the crime of which he was convicted, *People v. Chiappa*, 368 N.E.2d 925, 926-927 (Ill. App. 1977), but our plaintiffs do not claim to have been innocent, so we need not consider the effect of such a pardon either.

And though having a criminal record does reduce a person's job opportunities by impairing his reputation for good character, reputation is not a property or liberty interest within the meaning of the due process

clauses of the federal Constitution. *Siegert v. Gilley*, 500 U.S. 226, 233-35 (1991); *Paul v. Davis*, 424 U.S. 693, 710-12 (1976); *Brown v. City of Michigan City*, 462 F.3d 720, 729-32 (7th Cir. 2006); *Mosrie v. Barry*, 718 F.2d 1151, 1158-62 (D.C. Cir. 1983). Even if it were, this would not help the plaintiffs because they don't contest the convictions that injured their reputations, and this implies that they had in their criminal proceedings adequate process to try to protect their reputations from being sullied by a criminal conviction.

They do not claim to be seeking pardons in order to remove statutory disabilities, either, such as the right to vote or to hold public office; anyway most statutory disabilities resulting from a felony conviction are restored automatically upon the completion of the defendant's sentence, see Margaret Colgate Love, "Relief from the Collateral Consequences of a Criminal Conviction (Illinois)," January 2007, www.sentencingproject.org/tmp/File/Collateral%20Consequences/Illinois(2).pdf (visited Mar. 20, 2009), and others can be restored by administrative fiat. See, e.g., 730 ILCS 5/5-5.5-5 *et seq.*

And while a requirement of prompt action on a petition for a pardon may sometimes benefit the applicant, if the alternative would be a pocket veto, it is not a *substantive* entitlement; otherwise any time a state official failed to act within a prescribed period of time he would be deemed to have violated the federal Constitution. That cannot be correct, as only substantive entitlements are protected by the due process clauses. Unless compliance with a procedural requirement secures a substantive

entitlement, the failure to comply with it does not invade an interest protected by the due process clauses. "The executive's clemency authority would cease to be a matter of grace committed to the executive authority if it were constrained by the sort of procedural require-ments that respondent urges." *Ohio Adult Parole Authority v. Woodard, supra*, 523 U.S. at 285.

We do not even think that the Illinois statute creates a requirement of prompt, or indeed of any, action by the governor on a clemency petition. The statute merely describes steps in the sequence of procedures in clemency matters. There is first the petition, then consideration of it by the Prisoner Review Board, then "the Governor shall decide each application and communicate his deci-sion to the Board which shall notify the petitioner," and there are further steps after that. 730 ILCS 5/3-3-13. Unless and until the governor decides the application and communicates his decision to the Board, the further steps are pretermitted.

If this is wrong and the statute does require the governor to make a decision, still, it does not specify a time limit. It might seem that a "reasonable" time could be implied, as is done in contracts that do not specify a deadline for performance. E. Allan Farnsworth, *Contracts* § 3.28, p. 205 (4th ed. 2004); *Restatement (Second) of Contracts* § 204, comment d (1981); *Rose v. Mavrakis*, 799 N.E.2d 469 (Ill. App. 2003); *Meyer v. Marilyn Miglin, Inc.*, 652 N.E.2d 1233, 1239 (Ill. App. 1995). But we have no idea what a "reasonable" time for deciding a clemency petition would be. It would depend on the number of

petitions, which must vary from year to year (we have data only for 2005, when 713 clemency petitions were filed; the governor granted 1 and denied 31, and so 681 were left undecided), and on the other tasks besides reviewing recommendations for clemency forwarded to him by the Prisoner Review Board to which a governor must attend.

Executive clemency is a classic example of unreviewable executive discretion because it is one of the traditional royal prerogatives (along with receiving foreign ambassadors and commanding the armed forces) borrowed by republican governments for bestowal on the head of government. U.S. Const., art. II, § 2, cl. 1; *Schick v. Reed*, 419 U.S. 256, 260-66 (1974); *Ex parte Grossman*, 267 U.S. 87, 108-10 (1925); John Harrison, "Pardon as Prerogative," 13 *Fed. Sentencing Rptr*. 147 (2001) ("seeing the pardon power as a bit of the royal prerogative dropped into our generally law-bound constitutional system provides a perspective on the actual and possible functions of that power"). We therefore balk at the idea of federal judges' setting timetables for action on clemency petitions by state governors.

And what sanction could a federal court impose for noncompliance with any "reasonable time" deadline that the court might set? Would it be to grant the pardon? If so, the governor's office would be overwhelmed. Every felon in the state would apply for a pardon knowing that, with all applying, the governor's office, overwhelmed, would be unable to process the applications within the deadline set by the court, and so they would be

granted by default. Federal courts have run prisons, school systems, police and fire departments, and other state and local agencies found to have engaged in unconstitutional conduct. But for a federal court to run a governor's pardon system would be a step too far.

The ruling by the district court is reversed with instructions to dismiss the suit with prejudice.

REVERSED.