**Norman GOTCHER, Jr.,
Plaintiff–Appellant,**

v.

**Tana WOOD, et al., Defendants–
Appellees.**

No. 94–35484.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 10, 1995.

Decided Oct. 4, 1995.

John Midgley, Evergreen Legal Services, Seattle, WA, for plaintiff-appellant.

Talis M. Abolins, Assistant Attorney General, Olympia, WA, for defendants-appellees.

Before BEEZER and HAWKINS, Circuit Judges, and TEVRIZIAN,* District Judge.

MICHAEL DALY HAWKINS, Circuit Judge:

Appellant Norman Gotcher ("Gotcher") appeals the district court's dismissal of his civil rights action against Tana Wood, the Superintendent of the Washington State Penitentiary, and others (collectively "Wood"). Gotcher's appeal presents two issues: (1) does Gotcher possess a due process liberty interest in the accrual of good conduct time, and (2) does he possess a due process liberty interest in remaining free from disciplinary segregation. The district court concluded that he possessed neither and dismissed his complaint. We have jurisdiction pursuant to 28 U.S.C. § 1291. Because we believe the district court's dismissal of Gotcher's action was inappropriate, we reverse and remand the matter to the district court.

## I.

Gotcher is incarcerated in Washington State, where he is serving a sentence for burglary. He alleges in his complaint that he was charged twice in 1992 with "serious infractions" of his prison's disciplinary code. Specifically, he was charged with "[t]hreatening another with bodily harm or with an offense against his/her person." *See* Wash.Admin.Code (WAC) § 137–28–030(506). He alleges that, with regard to the disciplinary hearings on these infractions, Washington Department of Correction (DOC) employees, among other things, failed to give him 24–hour advanced written notice of allegations against him and did not allow him to call witnesses or present documentary evidence in his defense.

Gotcher was found guilty of the serious infractions at the disciplinary hearings. As a consequence, he lost 30 days of good conduct time credits and was placed in disciplinary segregation.

This action, brought under 42 U.S.C. § 1983, followed. Among other claims, Gotcher alleges that the DOC staff failed to afford him the process he was due in connection with the disciplinary hearings. Accordingly, he claims that his loss of good conduct time credits and his disciplinary segregation constituted compensable violations of his due process rights.

Wood filed a motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6), arguing that because Washington prison inmates do not possess a liberty interest in remaining free from disciplinary action, the complaint failed to state a claim upon which relief could be granted. In granting the motion to dismiss, the district court noted that because the Due Process Clause of the Fourteenth Amendment does not give rise to liberty interests in good conduct time credits or in remaining within the general prison

---

* The Honorable Dickran M. Tevrizian, United States District Judge for the Central District of California, sitting by designation.

population, the source of Gotcher's claimed liberty interest had to be Washington state law. Applying the "mandatory language/substantive predicate" due process analysis set forth in such Supreme Court opinions as *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), and *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989), the district court concluded that Gotcher did not possess a protectable liberty interest. The court therefore dismissed his complaint. Gotcher timely appealed that decision.

 We review de novo a dismissal for failure to state a claim, as it is a ruling on a question of law. *Everest & Jennings, Inc. v. American Motorists Ins. Co.,* 23 F.3d 226, 228 (9th Cir.1994). All allegations of fact must be taken as true and construed in the light most favorable to Gotcher. *See id.,* at 229. We will not affirm such a dismissal unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Id.*

## II.

As a threshold matter, Wood argues that the Supreme Court's recent decision in *Heck v. Humphrey,* —— U.S. ——, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), bars Gotcher's claim. In *Heck,* the Court held that, when this type of claim, if successful, will *necessarily* require a federal court to determine the constitutional validity of the inmate's continuing confinement, the claim is not cognizable until the plaintiff's sentence or conviction has already been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at ——, 114 S.Ct. at 2372.

 Wood argues that, because Gotcher challenges the disciplinary procedure which resulted in the loss of his good conduct time credits, his claim is governed by *Heck* because, if successful, it might affect the duration of his confinement. Wood's reliance on *Heck,* however, is misplaced. Gotcher's good conduct time credit claim is similar to the claim in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). In *Heck,* the Court expressly distinguished *Wolff,* noting that *Wolff* challenged the *procedure* by which the inmate was denied good-time credits. *Wolff,* like this case, involved a claim for using the wrong procedure, not for reaching the wrong result (i.e., the denial of good time credits). *See Heck,* —— U.S. at ——, 114 S.Ct. at 2370. "Nor is there any indication in the [*Wolff*] opinion, or any reason to believe, that using the wrong procedures necessarily vitiated the denial of good-time credits. Thus, the claim at issue in *Wolff* did *not* call into question the lawfulness of the plaintiff's continuing confinement." *Id.* Likewise, Gotcher's case does not call into question the lawfulness of his continuing confinement and is not barred by *Heck.*

## III.

We first address Gotcher's claimed liberty interest in receiving good conduct time credit. Pursuant to Washington's Sentencing Reform Act (SRA), inmates can earn an early release date through an earned early release program comprised of "earned time," *see* WAC § 137–28–006(5), and "good conduct time credits," *see* WAC § 137–28–006(6). "Good conduct time credits," which are at issue here, are defined as that portion of an inmate's potential sentence reduction gained by not receiving a "serious infraction." WAC § 137–28–006(6); *see also* DOC Policy No. 350.130 (defining "Good Conduct Time" as "[t]hat portion of time which an offender is eligible to earn by behaving pro-socially, i.e. not receiving serious infractions"). Thus, inmates who do not commit serious infractions are entitled to good conduct time credits, which can constitute 10 days of credit for every 30 days served. *See* DOC Policy No. 350.130.

These provisions were developed in response to Revised Code of Washington (RCW) § 72.09.130, which provides that the DOC "shall adopt" a system providing incentives for good conduct. Pursuant to RCW § 72.09.130, the good conduct time credit program "shall be fair, measurable, and understandable to offenders, staff, and the public."

Applying the "mandatory language/substantive predicate" due process analysis of *Helms* and *Thompson* to these facts, the district court held that Gotcher did not have a protectable liberty interest in the accrual of good conduct time credits. The Supreme Court, however, has since abandoned the "mandatory language/substantive predicate" analysis. *See Sandin v. Conner,* —— U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Calling for a "return to the due process principles ... correctly established and applied" in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), and *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), the Court revised the due process analysis to be applied in prisoner § 1983 actions.

> Following *Wolff,* we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

—— U.S. at ——, 115 S.Ct. at 2300.

■ For purposes of our due process analysis, the scheme of the good conduct time credit system in Washington appears to be indistinguishable from Nebraska's good conduct time credit system, which the Supreme Court in *Wolff v. McDonnell* found to confer a liberty interest on inmates. *See* 418 U.S. at 557, 94 S.Ct. at 2975. As the Court held in *Wolff:*

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing in "every con-

ceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within the Fourteenth Amendment "liberty" to entitle him to those minimal procedures appropriate under the circumstances and required by the Due Process Clause to insure that that state-created right is not arbitrarily abrogated.

*Id.* (citations omitted).

One apparent distinction between this case and *Wolff,* however, is that the Washington DOC has issued a "Policy" stating that

> [i]t is the purpose of Department policy to guide the Department personnel in the conduct and performance of their duties. It is not the intent to grant offenders under the jurisdiction of the Department by policy a state-created liberty interest in addition to those rights guaranteed to offenders under the United States Constitution.

DOC Policy 100.100, at 1.

This DOC policy directive, however, is not controlling. As *Wolff* indicates, the focus is whether the State has created a right of "real substance." If it has done so, the State cannot then emasculate that right merely by issuing the disclaimer that it was not its intent to create a liberty interest. Moreover, the disclaimer in a DOC policy statement does not override the provisions of the Washington Administrative Code. And as the WAC states with regard to prison disciplinary procedures, its purpose is to "provide a standardized system consistent with constitutional due process for ascertaining whether [prisoner] misconduct" has occurred. WAC § 137–28–005(1).

Thus, with regard to whether Gotcher possesses a liberty interest in accumulating good time credits, this case falls squarely under *Wolff,* which the Supreme Court noted in *Sandin* "correctly established and applied" due process principles in the prisoner liberty interest context. *See* —— U.S. at ——, 115 S.Ct. at 2300. Because the district court's

ruling conflicts with *Wolff,* we reverse that ruling.

### IV.

We next address Gotcher's claimed liberty interest in remaining free from disciplinary segregation. In *Sandin v. Conner,* the Supreme Court determined that a Hawaii inmate did not have a liberty interest in remaining free from disciplinary segregation because the inmate's 30 days in segregated disciplinary confinement "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." — U.S. at ——, 115 S.Ct. at 2301. The Court reached this conclusion after reviewing the record (the district court proceeding was resolved by summary judgment) and finding that, "with insignificant exceptions," the inmate's disciplinary segregation "mirrored those conditions imposed upon inmates in administrative and protective custody." *Id.* The Court supported this conclusion by discussing the various custodial conditions at the particular prison in question and by demonstrating that the plaintiff's segregation "did not work a major disruption in his environment." *Id.*

In contrast to the detailed record in *Sandin,* the record in this appeal is insufficient for a determination of whether the disciplinary segregation at issue imposed an "atypical and significant hardship on Gotcher in relation to the ordinary incidents of prison life." *Sandin,* — U.S. at ——, 115 S.Ct. at 2300. Because we will not affirm a dismissal under Fed.R.Civ.P. 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief, *Everest & Jennings, Inc.,* 23 F.3d at 228, we reverse the district court on its dismissal of Gotcher's claim with regard to disciplinary segregation, and we remand for further proceedings.

### V.

For the foregoing reasons, we REVERSE the district court's dismissal and REMAND for further proceedings.