Anthony BARONE, Jr., Plaintiff,

v.

Sherman HATCHER, Karl Sannicks, Robert Bayer, and SC/O Harwood, Defendants.

No. CV–N–95–029–ECR.

United States District Court, D. Nevada.

Oct. 30, 1997.

Anthony Barone, Jr., Indian Springs, NV, pro se

Charles Hilsabeck, Litigation Division, Attorney General's Office, Carson City, NV, for Defendants.

## ORDER

EDWARD C. REED, Jr., District Judge.

Presently before the Court is the Report and Recommendation ("Report") (# 76) of the Magistrate Judge in this civil rights case. Plaintiff Anthony Barone, appearing herein pro se, has objected (# 79), and Defendants have responded (# 80). For the reasons outlined below, the Report is AFFIRMED AND ADOPTED.

## BACKGROUND

In May 1994 Plaintiff, who was incarcerated at the Southern Desert Correctional Center, allegedly stole about $100 from the account of another inmate. After a hearing, Plaintiff was sentenced to disciplinary segregation. The hearing allegedly suffered from a number of procedural irregularities, as to which Plaintiff has sued. In addition, Plaintiff alleges that he was deprived of his First Amendment right to access to the courts as a result of being placed in disciplinary segregation.

Plaintiff originally filed this action in February 1995. Compl. (# 3). He has twice amended his Complaint; the present Second Amended Complaint was filed in February 1996. Amended Compl. (# 50). This Complaint names Mssrs. Hatcher, Sannicks, Bayer, Harwood, and O'Neil as Defendants, and asserts three constitutional causes of action—violation of due process (count II), conspiracy to violate due process (count I), and denial of access to the courts (count III).

All Defendants are represented by the State of Nevada, although we previously dismissed Defendant O'Neil from this action pursuant to Fed.R.Civ.P. 4(m). Order (# 70); Amended Answer (# 67). We also struck the parties' original summary judgment motions and permitted further briefing. Order (# 64). Accordingly, Defendants (# 68) and Plaintiff (# 66) filed cross motions for summary judgment, with associated oppositions (# 72, # 74), and Defendants' reply (# 75). The Magistrate Judge filed her Report (# 76) recommending granting summary judgment to Plaintiff on one issue and to Defendants on all other issues. Plaintiff objected (# 79), Defendants responded (# 80), and the objections are now ripe.

## DISCUSSION

### I. Summary Judgment Standard

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Northwest Motorcycle Ass'n v. U.S. Department of Agriculture,* 18 F.3d 1468, 1471 (9th Cir.1994). The moving party is entitled to summary judgment where, viewing the evidence and the inferences arising therefrom in favor of the nonmovant, there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Bagdadi v. Nazar,* 84 F.3d 1194, 1197 (9th Cir.1996). Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. Fed.R.Civ.P. 50(a). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon the mere allegations or denials of his pleadings but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Although the parties may submit evidence in an inadmissible form—namely, depositions, admissions, interrogatory answers, and affidavits—only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed. R.Civ.P. 56(c); *Beyene v. Coleman Security Services, Inc.,* 854 F.2d 1179, 1181 (9th Cir. 1988).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine

issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes which are irrelevant or unnecessary will not be considered. *Id.* Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53. Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. *Id.*

## II. The Claims

We first note that neither side has objected to the Magistrate Judge's analytical breakdown of Plaintiff's claims. We have compared the Report to Plaintiff's Second Amended Complaint, determined that the Magistrate Judge's analysis is correct, and enumerate the claims as follows:

1. Count II—Due Process
 a. Failure to provide adequate notice of hearing
 b. Refusal to permit witnesses to be called
 c. Failure to provide a statement of evidence relied on
 d. Supervisory liability
2. Count I—Conspiracy
 a. 42 U.S.C. § 1983
 b. 42 U.S.C. § 1985(3)
3. Count III—Denial of access to the courts

### A. Conspiracy

■ Plaintiff has offered no evidence of a conspiracy. The evidence he points to tends to show that Defendants were careless about safeguarding evidence and keeping records, but it does not show any sort of agreement. Indeed, that Plaintiff's original charges were dropped, and later reinstated by Defendant Hatcher acting alone, tends to show that the other Defendants *did not* conspire to deprive Plaintiff of his rights. Request for Admission 12 (August 16, 1995) (# 74, Ex. 3); Interrogatory 1 (August 16, 1995) (# 74, Ex. 6(A)). Moreover, to the extent this claim is based on 42 U.S.C. § 1985(3), Plaintiff has offered no evidence of a "class-based animus" within the meaning of *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). Defendants are entitled to summary judgment on this is claim.

### B. Supervisory Liability

■ The Report concludes that Plaintiff offered no evidence of a failure to train or of deliberate indifference on the part of Defendants Hatcher, Sannicks, and Bayer. Report at 9(# 76). Plaintiff objects on the ground that his disciplinary appeal put Defendant Hatcher on notice of Plaintiff's allegations, and that Hatcher did nothing. Objection at 7–8(# 79). This is not what the appeal says, however. Request (# 79, Ex. 2). Plaintiff requested to speak to Warden Hatcher, but nothing on the written appeal form indicates that Mr. Hatcher ever knew of the request; his answer to Plaintiff's request for admission number 9 (dated August 1995) similarly indicates he never knew of the request or of the disciplinary appeal. Admissions (# 74, Ex. 3). We agree with the Magistrate Judge that this is insufficient to raise a genuine issue of material fact regarding supervisory liability.

### C. *Edwards v. Balisok*

With the exception of his claim of denial of access to the courts, Plaintiff's claims are subject to a difficulty presented by a recent Supreme Court case, *Edwards v. Balisok,* —— U.S. ——, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997): under what circumstances is a suit over conditions of confinement cognizable under § 1983? Assuming for present purposes that Plaintiff's placement in disciplinary segregation has no collateral consequences (such as a greater likelihood that parole would be denied), *Balisok* arguably holds that a case such as this may only be brought as a habeas petition. This was the Magistrate Judge's view of *Balisok.* Report at 5–6(# 76). Plaintiff objects. Objection at 9(# 79). We have conducted a de novo review; although we think the question merits

considerable attention, we ultimately conclude that the Magistrate Judge correctly applied the law.

### 1. Supreme Court Authority

 In the beginning, there was *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), a case where prison inmates had been disciplined by rescission of their good time credits, and where the inmates sued under § 1983 for their restoration. *Preiser* established the principle that a suit challenging "the very fact or duration of [ ] physical confinement," where the relief sought is immediate or speedier release, is cognizable only as a petition for writ of habeas corpus and not as a § 1983 action. *Preiser*, 411 U.S. at 500, 93 S.Ct. at 1841–42. By contrast, "a § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody." *Id.* at 499, 93 S.Ct. at 1841. The Supreme Court also noted in dicta that habeas corpus may also be available to challenge a prisoner's "conditions of confinement." [1] *Id.*

 The Supreme Court recently extended this principle to damages suits for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid." *Heck v. Humphrey*, 512 U.S. 477, 486, 114 S.Ct. 2364, 2372, 129 L.Ed.2d 383 (1994). That is, if a judgment in favor of a prisoner in a § 1983 case would "necessarily imply the invalidity of his conviction or sentence ... the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487, 114 S.Ct. at 2372. In *Heck*, the validity of the plaintiff's conviction was implicated because his allegations were essentially that he had been framed. *Id.* at 479, 114 S.Ct. at 2368. Significantly, the Supreme Court viewed *Heck* as being about "challenging the validity of outstanding criminal *judg-*

*ments,*" and by "judgments" the Court meant convictions and their associated "sentences," "imprisonment," or "confinement." *Id.* at 486, 114 S.Ct. at 2372.

In the instant case, Mr. Barone does not challenge any such judgment. Nor does he challenge, either explicitly or implicitly, the fact or length of his confinement. Instead, he challenges the procedure used to decide his guilt at a prison disciplinary hearing totally unrelated to the criminal trial and judgment that sent him to prison in the first place. Again, for present purposes we assume that his prison disciplinary record has no bearing on the likelihood of parole or on any other mechanism for changing the "fact or length of his custody." As a result, neither *Preiser* nor *Heck* bars this action; indeed, the Ninth Circuit formerly held categorically that "a claim challenging only the procedures employed in a disciplinary hearing is always cognizable under § 1983." *Balisok,* —— U.S. at ——, 117 S.Ct. at 1587 (citing *Gotcher v. Wood,* 66 F.3d 1097, 1099 (9th Cir.1995), *vacated Wood v. Gotcher,* —— U.S. ——, 117 S.Ct. 1840, 137 L.Ed.2d 1045 (1997)).

*Balisok* changed all this. In *Balisok* the plaintiff, like Mr. Barone, had been placed in segregation pursuant to a disciplinary hearing, and like Mr. Barone had sued for damages over the procedures used at that hearing. Unlike Plaintiff, though, Balisok's discipline also included the same punishment suffered by the *Preiser* plaintiffs: a loss of good time credits. Accordingly, the Supreme Court combined *Preiser* and *Heck:* "[t]he principal procedural defect complained of by respondent would, if established, necessarily imply the invalidity of the deprivation of his good-time credits," so that Balisok's suit was not cognizable under § 1983. *Balisok,* —— U.S. at ——, 117 S.Ct. at 1588. Since Mr. Barone did not lose any good

---

**1.** Contrary to what Plaintiff suggests, habeas corpus relief is available to challenge the conditions of confinement under Ninth Circuit case law, although there has been some dispute over whether it ought to be available. *E.g., Nigro v. Sullivan,* 40 F.3d 990 (9th Cir.1994); *Bostic v. Carlson,* 884 F.2d 1267 (9th Cir.1989); *Zimmerlee v. Keeney,* 831 F.2d 183 (9th Cir.1987). *But see Nigro,* 40 F.3d at 998 (Noonan, J., dissenting)

(arguing that habeas relief should not be available where there has been no showing that discipline would affect the duration of confinement or likelihood of parole). That is, whether or not a state court would address a habeas petition on the merits, *Nigro* holds that federal habeas is available here if Plaintiff is willing to accept only injunctive relief.

time credits, *Balisok* (narrowly construed) does not bar his suit.

The problem is that it is unclear whether we should construe *Balisok* narrowly. *Balisok* had been punished not only with loss of good time credits but also with disciplinary segregation and isolation. *Id.* at ——, 117 S.Ct. at 1586. Plainly, loss of good time credits changes the length of an inmate's confinement, so that a challenge to such a loss is unavailable, as both *Balisok* and *Preiser* teach. But disciplinary segregation by itself does not change the fact or length of confinement—it only changes the conditions of confinement. There is no indication in *Balisok* that the Supreme Court recognized this fact. Nowhere in the opinion (except in the recitation of the facts) does the Court mention that Balisok suffered any punishment other than loss of good time credits. Nonetheless, all nine Justices agreed that Balisok's allegations, if true, "necessarily imply the invalidity of the *punishment* imposed," as opposed to the fact or length of confinement in state prison. *Id.* at ——, 117 S.Ct. at 1589 (Scalia, J., for the majority) (emphasis added); *id.* at ——, 117 S.Ct. at 1589 (Ginsburg, J., concurring). True, there are passages where the Court apparently assumes that only loss of good time credits is at issue; for example, where the Court notes that "prospective relief will not 'necessarily imply' the invalidity of a previous loss of good-time credits," and where the concurring Justices point out that some procedural defects "would not necessarily imply the invalidity of the deprivation of [ ] good-time credits." *Id.* at ——, 117 S.Ct. at 1589 (Scalia, J.); *id.* at ——, 117 S.Ct. at 1589 (Ginsburg, J., concurring). But there are also three sentences in the majority opinion which imply (notwithstanding the Court's clear recognition that "due process requirements in a prison disciplinary hearing are in many respects less demanding than those for criminal prosecution") that "the judgment" for purposes of examining "implied invalidity" is the judgment of the disciplinary tribunal rather than that of the state criminal court.[2] *Id.* at ——, 117 S.Ct. at 1588.

## 2. Interpreting *Balisok*

Construed narrowly—that is, limited to the question of deprivation of good time credits—*Balisok* does not bar Mr. Barone's suit, since he did not lose any good time credit. Construed broadly—that is, interpreting "the punishment" to be any punishment imposed by "the judgment" of a prison disciplinary panel—*Balisok* bars the instant action since in essence Plaintiff challenges the validity of his disciplinary hearing's result. The question presented is, should we construe *Balisok* narrowly or broadly?

The three Ninth Circuit cases to address *Balisok*, although not entirely in agreement, do offer some insight. In both *Butterfield v. Bail*, 120 F.3d 1023, 1024 (9th Cir.1997), and *Woratzeck v. Arizona Bd. of Executive Clemency*, 117 F.3d 400, 403 (9th Cir.1997), the plaintiffs had challenged the procedures used in, respectively, a parole hearing and a clemency hearing. In *Woratzeck* the Court of Appeals interpreted the term "judgment" to refer to the original state criminal judgment. *Woratzeck*, 117 F.3d at 403 ("a new clemency hearing would not demonstrate the invalidity of his death sentence" (punctuation omitted)). That is, *Woratzeck* takes a narrow view of *Balisok*. In *Butterfield* the Court took a different view, focussing not on the judgment but on continued confinement. *Butterfield*, 120 F.3d at 1024 ("a challenge to the procedures used in the denial of parole necessarily implicates the validity of the denial of parole and, therefore, the prisoner's continuing confinement"). *Butterfield* does not really address the question we face here, at least not as we have framed it.[3]

By contrast, the most recent of the three Ninth Circuit cases to have considered the implications of *Balisok* takes a broad view

---

2. —— U.S. at ——, 117 S.Ct. at 1587 ("the nature of the challenge to the procedures could be such as necessarily to imply the invalidity of the judgment"); *id.* at ——, 117 S.Ct. at 1588 ("the record contains ample evidence to support the judgment"); *id.* at ——, 117 S.Ct. at 1588 ("the basis for attacking the judgment").

3. If there exists a way of reconciling *Woratzeck*, which holds that a challenge to a clemency hearing is cognizable, with *Butterfield*, which holds that a challenge to a parole hearing is not cognizable, we are unable to discern it. Fortunately, reconciling these two cases is not necessary to our holding.

and is directly on point. In *Gotcher v. Wood* the plaintiff, after a prison disciplinary hearing, had been punished in two ways: he lost good time credits and he was placed in disciplinary segregation. *Gotcher,* 66 F.3d 1097, 1098 (9th Cir.1995). The Court took up the two forms of punishment separately; it held that Gotcher had stated a claim with respect to the loss of good time credits, and that the record was insufficient to determine whether placement in disciplinary segregation implicated due process. *Id.* at 1100–01.

The Supreme Court vacated and remanded in light of *Balisok. Wood v. Gotcher,* —— U.S. ——, 117 S.Ct. 1840, 137 L.Ed.2d 1045 (1997). On remand, the Ninth Circuit's holding was both clear and directly on point: "[*Balisok* ] forecloses Gotcher's entire compensatory claim under 42 U.S.C. § 1983[and] we [therefore] do not reach the issue of whether Gotcher has a protectable liberty interest in ... remaining free of disciplinary segregation." *Gotcher v. Wood,* 122 F.3d 39, 39 (9th Cir.1997). The Court affirmed the District Court's dismissal for failure to state a claim; that is, it affirmed even the dismissal of Gotcher's claim that his disciplinary segregation had been imposed without due process. *Id.*

■ As we understand the cases, *Gotcher* reads *Balisok* broadly, inasmuch as it holds that disciplinary segregation, allegedly imposed without due process, that does not implicate the validity of the original criminal sentence is nonetheless not compensable under § 1983, and *Woratzeck* (arguably *Butterfield,* as well) reads *Balisok* narrowly, in that it holds that the "invalidity of the judgment" refers to the invalidity of the original criminal conviction and sentence. Thus, under *Gotcher* Plaintiff's due process claim is not cognizable, while under *Woratzeck* Plaintiff's due process claim does not call into question the validity of his original conviction and sentence and is therefore cognizable. The question presented thus reduces to, do we follow *Gotcher* or do we follow *Woratzeck?*

For two reasons, we think *Gotcher* is the precedent to follow. First, it is directly on point, in contrast to both *Woratzeck* and *Butterfield;* that is, it squarely holds that a challenge to the procedures used in a disciplinary hearing which resulted in placement in disciplinary segregation (and no other

punishment or segregation) is not cognizable under § 1983. Second, it is the most recent of the three post-*Balisok* Ninth Circuit cases. True, *Balisok* itself has not yet been decided by that Court on remand, and when it is it may change the legal landscape, but until then, faced with apparently conflicting Circuit authority, we think it best to simply follow the most recent case.

■ As a result, we are forced to conclude, in concord with the Magistrate Judge, that the present action is largely foreclosed by *Edwards v. Balisok.* We are not entirely happy with this result, because as interpreted *Balisok* implicitly overrules *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), at least in part. But we must follow Circuit case law come what may. Because our holding applies regardless of the collateral consequences flowing from Plaintiff's punishment (such as a smaller chance of being paroled), those collateral consequences make no difference. Opp'n at 6–7(# 74).

**D. Failure to Provide a Statement of Evidence**

■ Plaintiff challenges his disciplinary hearing on a ground not challenged in *Gotcher,* and therefore not necessarily foreclosed by that case: Defendants allegedly did not provide a written statement of reasons and evidence relied on in their disciplinary decision-making. We agree with the concurring Justices in *Balisok* (and the Magistrate Judge) that such a procedural defect does not necessarily imply the invalidity of either the disciplinary hearing itself or Mr. Barone's continuing confinement. *Balisok,* at ——, 117 S.Ct. at 1589 (Ginsburg, J., concurring). Assuming Plaintiff possesses some interest of which he may not be deprived without due process, denial of a statement of reasons and of evidence relied upon by the tribunal violates the Fourteenth Amendment in the context of a prison disciplinary hearing. *Wolff v. McDonnell,* 418 U.S. 539, 564–65, 94 S.Ct. 2963, 2978–79, 41 L.Ed.2d 935 (1974).

**1. Disciplinary Segregation**

■ There are two possibly protected interests here, a liberty interest in not being

placed in disciplinary segregation, and a property interest in not being ordered to pay restitution. As for disciplinary segregation, we think on the facts of this case that Plaintiff's punishment does not rise to a level that implicates the Due Process clause. Report at 7(# 76). Although the Ninth Circuit has not yet determined whether disciplinary segregation in Nevada state prisons "imposes atypical and significant hardship," so as to trigger a liberty interest in being free of such segregation, there exists a test for evaluating the atypicality and significance of the hardship.[4] *Sandin*, 515 U.S. at 483–85, 115 S.Ct. at 2300. Specifically, a court should examine 1) whether conditions in disciplinary segregation violate the Eighth Amendment, 2) whether there is a "major difference" between conditions in disciplinary segregation and in the general prison population, 3) whether a transfer will affect the length of a prisoner's confinement, and 4) the duration of the transfer. *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir.1996).

Applying this test, Plaintiff has offered essentially no evidence that disciplinary segregation at the Southern Desert Correctional Center violates the Eighth Amendment, and he offers only a conclusory and unsubstantiated averment that his punishment will affect his "statutory work time" and chances of being paroled. Opp'n at 6–7(# 74); *see Keenan*, 83 F.3d at 1089–1092 (listing ways in which incarceration might violate the Eighth Amendment). As for the differences between disciplinary segregation and the general prison population, Defendant Bayer's affidavit demonstrates that disciplinary segregation is similar to administrative segregation. Bayer Aff. (# 68). Specifically, inmates "should be permitted" to possess all their personal property, including clothing, they receive the same meals and rations as general population inmates, they have the same correspondence privileges, they are allowed "contact visits," they are provided with "the means to keep themselves clean and well groomed," and they are allowed 10 hours per week outdoor exercise. *Id.* The only other differences of which there is evidence in the record is that Plaintiff was not allowed

direct personal access to the law library, and inmates generally "should be" limited in canteen privileges and phone privileges. Inmate Request Form (# 74, Ex. 7); DOP Bulletin (# 74, Ex. 9). As for the length of Plaintiff's segregated confinement, 365 days may be unusual, and is several times longer than that found to be uncompensable in other cases. *Sandin*, 515 U.S. at 474–75, 115 S.Ct. at 2295 (30 days); *Mujahid v. Meyer*, 59 F.3d 931, 932 (9th Cir.1995) (14 days).

On balance, Plaintiff's length of confinement weighs in his favor, but the other factors weigh against him; in particular, the first (Eighth Amendment) and third (effect on duration of confinement) factors weigh especially heavily against him. The second factor (major difference between segregation and general population) is problematic, since the evidence is so sketchy. Specifically, the evidence in the record mainly bears upon the "normal" conditions of confinement in disciplinary segregation, whereas what we are concerned with are the conditions of confinement *actually* suffered by Plaintiff. As to that, all we have other than the pleadings (which are of course not evidence) is proof that Plaintiff had no direct access to the law library. Clearly, Plaintiff must have suffered other deprivations; otherwise, disciplinary segregation would not be used as "discipline." But we must base our ruling on the evidence presented, and the evidence presented of what disciplinary segregation conditions "should be" tends to show that the difference between disciplinary segregation and the general prison population in this case is not "major." All in all, Plaintiff's lengthy placement in segregation does not outweigh the other three *Keenan* factors. Consequently, Plaintiff did not have a liberty interest in remaining free of disciplinary segregation and Defendants had no duty to provide Plaintiff due process at his hearing.

### 2. Restitution

The Magistrate Judge concluded that deprivation of funds in Plaintiff's inmate account constituted an atypical and significant

---

4. We agree with the Magistrate Judge that *Sandin* applies retroactively. *Mujahid v. Meyer*, 59 F.3d 931, 932 n. 2 (9th Cir.1995).

hardship under *Sandin,* that Plaintiff therefore possessed a property interest in the $33.48 he was ordered to repay, and that he was deprived of that property interest without the due process mandated by *Wolff.* Report at 8(# 76). Specifically, he was entitled to a statement of the evidence and reasons relied upon by the disciplinary panel that ordered restitution. *Wolff,* 418 U.S. at 564–65, 94 S.Ct. at 2978–79. Defendants do not dispute the Magistrate Judge's conclusion that they denied Plaintiff this statement, nor do they otherwise object to the Magistrate Judge's recommendation on this issue. We therefore review for clear error and find none. *U.S. v. Remsing,* 874 F.2d 614, 617 (9th Cir.1989) (review of facts is for clear error where parties do not object); Report at 7–8(# 76). Plaintiff has demonstrated that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law.

■ Neither side put damages at issue in the instant motions for summary judgment; on the other hand, there is literally no evidence in the record that Plaintiff suffered any actual damages as a result of being denied due process. Consequently, we adopt the Magistrate Judge's recommendation that Plaintiff should be required to show that he should be awarded judgment in a sum greater than $1.00.

### E. Denial of Access to the Courts

The Magistrate Judge recommended granting summary judgment to Defendants on Plaintiff's claim for denial of access to the courts, since Plaintiff had failed to raise a genuine issue of material fact as to the existence of actual injury. Report at 9–10(# 76) (citing *Lewis v. Casey,* 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)). Specifically, Plaintiff failed to produce evidence that the hindrance he suffered in filing his opposition to the motion to dismiss his habeas corpus petition, *Barone v. Hatcher,* CV–S–94–289–PMP(LDG), was the proximate cause of the petition's ultimate dismissal.

■ Plaintiff objects, but does not offer any rebuttal of this reasoning. We have conducted a de novo review of the pleadings and agree with the Magistrate Judge that there is no evidence that timely filing an opposition to the motion to dismiss in CV–S–94–289–PMP(LDG) would have made any difference to the case's outcome—the petition was dismissed for failure to exhaust state remedies. Indeed, the dismissal was affirmed by the Ninth Circuit on that ground. *Barone v. Hatcher,* 65 F.3d 174 (9th Cir. 1995) (unpublished memorandum). Plaintiff's access to the courts claim fails.

**IT IS, THEREFORE, HEREBY ORDERED THAT** the Magistrate Judge's Report and Recommendation (# 76) is **AFFIRMED AND ADOPTED,** and Plaintiff's objections thereto are **OVERRULED,** as outlined above.

**IT IS FURTHER ORDERED THAT** Plaintiff's (# 66) and Defendants' (# 68) cross motions for summary judgment are each **GRANTED IN PART** as outlined above.

**IT IS FURTHER ORDERED THAT** Plaintiff shall have twenty (20) days from entry of this Order within which to file evidence, points, and authorities as to his damages, and Defendants shall thereafter have twenty (20) days within which to respond. There shall be no reply. Failure by Plaintiff to so file will result in judgment being entered in his favor in the sum of $1.00 in nominal damages.